Thank you, your honor. It's a pleasure to be here this morning. Mr. Zielinski, my colleague, is on his first and last honeymoon, so he is not with me today. Excuse me, counsel, I don't think I heard your name. I'm Alan Harris. Thank you. Thank you. I would like to start with the state law claims and then work up to the Fair Labor Standards Act, if I may. With regard to the state law claims, the trial court misapprehended that we sought recovery under the California Labor Code under the same theory as that underlying our FLSA claims. The California Labor Code claims are broader and include claims for continuing wages under Section 203 of the Labor Code. That section provides that one must be paid all accrued vacation and all accrued wages at termination. At the trial, we had these arguments in our pretrial memo. They were in our proposed findings. And at the trial, I explicitly argued, quote, you have to pay all vacation pay at termination under state law. But, counsel, you also, in a footnote, I believe, in your opposition to motion for summary judgment, recognized that if you were to make a vacation time claim under 227.3, you would have to amend your complaint. And you didn't amend your complaint. You didn't make a motion to amend your complaint. The complaint was unamended, but those are two separate things, I think. It's one thing to say I want to collect my vacation pay under 227.3. And another thing to say that in which case you're going for a finite number of $600 or $700. And another thing to say I want my continuing wages because the vacation pay was not paid. That was the claim we were making under the complaint. What you're saying is that we can take or Judge Cooper and Judge Nguyen should have taken into consideration, should not have taken into consideration the vacation pay in determining whether continuing wages were actually paid. No, Your Honor. They should have taken into consideration the failure of the defendant to pay the vacation pay. I see. And awarded continuing wages under 203. There are two separate possible courses of action when you don't get your vacation pay. One would be a claim under 227.3. And another, which we followed here, was a claim for continuing wages under 203. And so this was argued at the argument during the trial. I said we have to look at the substance of the transaction. And Costco was, quote, taking advantage of the happenstance that some of these people hadn't been able to take their vacations and so had accrued vacation. At page 12 of the argument, I said under our state law when someone is leaving work, they required under state statute at the time of termination to be paid all accrued vacation pay and to be paid all accrued wages at the same time. And Mr. Cadoux, during the oral argument, of great significance at page 42. Well, are you talking about excerpts of record 42? Your Honor, this is the record at page 144. Excerpts of record 144? Yes, Your Honor. My quote was at page 112 and 114 of the record. And Mr. Cadoux at page 144 of the record said let's assume all the accrued leave was vacation leave because of Judge Cooper's earlier rulings. We had just presented, except with Ms. Ward, we had just presented charts showing accrued sick leave and accrued vacation. The chart just had all accrued vacation and sick leave as one number, except for Ms. Ward. So Mr. Cadoux said let's assume all accrued leave was vacation pay. Now, if we look at Exhibit C to the decision below, that's the wage statement of Kerry Ward at page 100 of the record. And that shows that we have wages on the last check of $585. It shows sick pay of $469, vacation pay of $812, and the credit card deduction of $1,135. That's at page 100 of the record. Exhibit C to the court's findings of fact and conclusion of law. So with respect to Ms. Ward, we see in fact the credit card deduction alone exceeded the vacation pay, the sum of the vacation pay and the wages. And so it is clear from this exhibit that was part of her decision that Ms. Ward was not paid all of her wages from the last pay period and her vacation pay. The sum of $585 and $812 exceeds the amount deducted for the credit card payment, $1,100. So just by looking at Exhibit C to the judge's decision below, Judge Wynn's decision. I'll tell you what I don't find in that exhibit. And it's I'm talking now about the stipulated facts regarding Carrie Ward numbers 16 through 29. Mr. Harris, what I don't find is any calculation of what Ms. Ward was owed under minimum wage, under overtime, and under vacation. Can you do that for me? Yes, Your Honor. If you go to Exhibit C. I don't know what you mean by Exhibit C. Exhibit C is page 100 of the record, which is part of the court's findings of fact and conclusions of law. And we see on this page the unpaid overtime was .24 hours. It's in the left column of her pay stub. This is page 100 of the record. I'm looking at the clerk's record. I'm looking at Exhibit C. Yes, Your Honor. And that is the final word. It's a check for two hundred thirty one dollars. Is that what you want to look at? Yes, sir. All right. And if you look at the overtime row, it's the third row. And over in the first column, the amount of overtime was .24 of an hour. The amount of minimum wage would be the sum of 25.52, 10.48, 4.25, and .75. The minimum wage she was required, I believe it was seven dollars and twenty five cents an hour at this point. I'm sorry. Let me see if I can be precise. What do you claim was the minimum wage the law required Mrs. Ward to be paid? The minimum wage she was required, I believe it was seven dollars and twenty five cents an hour at this point in time. You believe it was. Do we have a record citation for that? Your Honor, I'm sure the amount of minimum wage is in the record. I don't know what page that's on. And the overtime would be time and a half. Twenty five plus three. Seven. Twenty five times one point five would be about eleven dollars. Something that would be. So now my question is this. Is there some calculation anywhere of what Ms. Ward was owed pursuant to law for minimum wage and overtime? Can you tell me that?  Proposed. Which are in the appendix as labeled S.E.R. And. The trial brief begins at one forty nine and the proposed findings, I think, will begin at. Let's see here. Again, a page S.E.R. forty seven. It was in the exact numbers. They were very extensive because there were so many people involved. But the exact numbers. For example, at S.E.R. fifty two, it states that Ward's final paycheck proposed finding twenty seven. Ward's final paycheck reflects that during her final pay period, she performed forty one hours of non overtime. I understand that. I understand. I can read her check and I know what Costco was paying her. That's not a problem. My question is, what is your claim? Your claim is that she wasn't paid her minimum wage and her overtime wage according to law. Correct. Because the credit card deductions were so great as to eat into what she should have been paid when she was terminated. Correct. My question is, what should she have been paid according to law, not according to her contract? Right. According to law, it would be the forty one hours times seven. Forty one hours times seven. Twenty five and twenty point two hours times eleven. Right. Have you done that calculation? I don't have it. Don't worry about it. Don't take time. We can do that. All right. And then your honor, the larger sum that's involved is the vacation is the continuing wages on account of the fact that there was a taking of the vacation. As let's concentrate a minute on the vacation issue. All right. Now, you said that you knew that you had to make an amendment to the complaint to claim the vacation money. But you're claiming under 203 that continuing wages entitle you to payment of minimum wage and overtime and vacation without deduction from the by the credit card balance. Correct. It's a slightly nuanced difference. Our what we claim is we're entitled to 30 times on this ward's regular daily wage. The law states two or three says you're entitled to a 30 if you're not paid all your vacation and your wages at termination, which she was not. You're entitled to 30 times your daily wage, which in this case we see her straight time pay. Pardon me. Is there a calculation anywhere that I can find as to these three figures? Number one, what Ms. Ward should have been paid according to law, what she should have been paid for overtime according to law and what she should have been paid for her vacation time. And then what was deducted from her for her credit card and what was the remainder of those five digits? I think so, Your Honor. If you look at page 100 of the record. That's E.R. 100. No, this one is just. Well, yeah. E.R. 100. Yes, Your Honor. All right. Those figures are there. I'm sorry I've eaten up so much of your time. That's fine. And I'm sorry this wasn't thought through and laid out in the brief more clearly. But there we see that her it shows the 41 hours. And we know. Let me interrupt you with another question, which I think is more important. When was the first time that you learned that the trial judge was going to take into consideration the unpaid accrued vacation pay and determining whether the minimum wages and overtime had been paid to each of the parties? I had no idea of that until trial, Your Honor. Until the trial decision came down, right? No, until we each side was given one hour for oral argument based on our stipulated facts. And Judge Wynn opened that argument by telling us that she was going to change Judge Cooper's findings and take into consideration vacation and sick pay. And did she tell you why she was changing Judge Cooper's findings? She said that, in her opinion, Judge Cooper's findings, as I understand her ruling, it was that Judge Cooper had been concerned that there would be some people who had no vacation pay. And so if the credit card deduction was taken from someone who had no vacation pay, they'd be treated differently than would people who had accrued vacation. At the time of the motion of summary judgment, how many parties were there plaintiff? I believe there was only one at that time. That's right. So why, if there were no other parties plaintiff, why would what other people have in pay be in any way relevant? Well, I think Judge Cooper was looking ahead because it was pled as a class action. Now, from my standpoint, if you look at the contract that is at issue here, which is Exhibit A at page 96 of the record, this was drafted by Costco, and it states this is an authorization from the employee to Costco to deduct from my final paycheck the full amount of my balance on my credit card. It doesn't give authority to deduct from accrued vacation that I might earn at some time in the future. It doesn't give authority to deduct from sick pay. It simply says you can deduct from my final paycheck. A paycheck, as we understand it, is a bank instrument that pays your salary. And as we see in the record, some people were given separate paychecks and separate checks for accrued vacation. One question. What remedy do you seek? The remedy we seek, Your Honor, is that this be remanded, and there was consideration to be given to the motion for class certification under the new standards we have that have recently. You're talking about BUSC? Yes, Your Honor. All right. Plus what? Plus, Your Honor, following what Mr. Caddo said, he said let's assume that accrued leave was vacation. Let's assume that all the accrued leave was vacation leave. And so it should, when we go back, I think those should be split out, but these data should be analyzed for purposes of both state and federal law, taking into consideration whether it's pay, whether it's for state law only, whether it's pay, vacation, or sick leave. Under federal law, I think the contract only authorizes deduction from the salary portion. It didn't say the contract, which is very important, at Record 96, doesn't say you have authority to take my accrued vacation. It doesn't say you have authority to take my accrued sick leave. And so for the purposes of the FLSA, I think the court, in reconsidering this matter, should assume that the entire deduction was taken from the paycheck, and then we'll see that the people were, in fact, deprived of their minimum wage and overtime as we go through the analysis on a person-by-person basis. It's their position that regardless what the credit card contract calls for, the law provides that workers, when terminated, should get their minimum wage and overtime and vacation. And if there's a credit balance still due to the credit card company, the small claims court is always available. And the people, these are good, honest people. I'm sure they'll pay their bills. In large part, most of these people will. Even if they aren't, they can't deduct it from those final paychecks? You cannot deduct it under Barnhill. Thank you. I've taken you beyond your time. Could they deduct it from the sick pay? I'm sorry? Could they deduct it from the sick pay? No, Your Honor, because the authorization that the people signed says, I'm only authorizing you to deduct from my final paycheck. It doesn't say I'm authorizing you to deduct from my accrued sick pay. But that's a matter of contract interpretation, not law, right? Yes, sir. And so I'd say under the contract, they're limited to taking from the paycheck, not from the accrued vacation and not from accrued sick pay. All right. We've taken you way beyond your time. I'm sorry. We'll give you a couple of minutes of your time. I appreciate it. Thank you very much. I think I may have found the calculation we were looking for, so maybe you can just take a look at it later. Let us know if it's on the appellant's excerpt of record, page 39. It's page 3 of your motion for an order amending the findings. I think that's the calculation, but you can let us know later if there's a different one. Good morning, Your Honors. David Cadue for Costco. Judge Bea, it is true, as counsel says, that Judge Wynn announced at the beginning of the hearing on June 27, 2011, that she was taking a second look at the methodology that Judge Cooper, back in the summary judgment, had taken. And that was then argued extensively throughout the hearing. The plaintiff never thereafter requested the court to reopen the record. Instead, it said in her findings, page 5 of the findings, however, that conclusion, that is Judge Cooper's conclusion, was reached in the context of an undeveloped factual record and reflected concerns that different employees might be treated differently depending on whether they had accrued sufficient vacation and sick leave pay to cover the credit card withholding. Is that the basis? Yes. Why does that make any difference? The question is the question of law that applies whether there's one plaintiff or whether there's 19 with all different claims. The question is do you include vacation pay in totaling up whether the final check covers minimum wage and overtime rates. Well, first, Your Honor, it's a question of fact. From what pool of money is the deduction, in fact, made? It's a deduction if vacation pay is included or not is a question of law. Oh, that is correct, Your Honor. Well, so what does it matter if different employees may be differently treated depending on whether they've been paid or accrued vacation pay? Well, Judge Cooper's reasoning has always been somewhat elusive to me, but that was her statement. No, what I'm saying is that Judge Nguyen's reasoning is somewhat elusive to me. Well, let's back up a bit to basics. Vacation pay is wages. You can't, absent a good authorization, you can't take wages from a final paycheck. We agree on that. By the same token, sick pay is not protected. You can't take sick pay from a final paycheck. Now, when you have a situation where a person's sick pay balance exceeds their credit card authorization, in our view, no question of law should arise in that case. Right. And so in a particular case, and where all this starts is that Mr. Harris, for good strategic reasons, in his mind, argued from the beginning that vacation pay should be disregarded and we should only look at earned wages during the current pay period to determine whether there was an FLSA violation. And so then his position from the beginning is disregard vacation pay. And he quoted me in the hearing at pages 144 as saying, let's assume that there was accrued vacation invaded by the deduction. And at that point, I articulated our fallback argument. Our fallback argument is even if the deduction in a given case did invade accrued vacation, under Section 224 of the Labor Code, we are authorized to take that deduction. And we argue that Mr. Harris and Judge Cooper both are wrong on Barnhill. And we've briefed that extensively. And it is an issue of first impression. But I also went on to say at page 146ER that for whatever reason, the complaint doesn't even allege a violation of the Labor Code in withholding money from accrued vacation. And in fact, Mr. Harris in his trial brief. And that's it. Supplemental except a record 160 minus two through four was very explicit in arguing that vacation pay should be disregarded and determining whether there's been a violation or invasion of minimum wage and and overtime. So that's the change in the sea change that occurred when Judge Nguyen said, I'm going to consider vacation pay in determining whether sufficient pay has been has been made a termination to these workers. That occurred at trial. What remedy did Mr. Harris have to at that point? Should he have made a motion to amend his complaint? He should have made a motion to amend his complaint. He should have made a motion to reopen the record because the record in front of the court combines vacation and leave pay together, making no distinction between the two. It simply differentiates wages during the current pay period versus versus leave and leave in the form of either vacation or sick leave. And for me, I ask a question, counsel. If I heard you correctly, a little earlier, you say you conceded that vacation pay is subject to the Fair Labor Standards Act. I meant to say vacation pay is subject to the Labor Code protections of the Labor Code in Section 227.3. In terms of the FLSA, the FLSA protects minimum wage and the FLSA protects overtime. The FLSA does not protect sick leave, nor does the FLSA protect vacation pay. All right. To the extent we're talking about sick leave and vacation pay. Those amounts can be excluded in terms of the offset of the credit card debt against the minimum wage. Is that correct? Yes, for purposes of the FLSA analysis. And also we would say for purposes of a Labor Code minimum wage and overtime analysis. If in fact the plaintiff is not asserting vacation pay as a factor in that, and that's what Judge Wynn found in this case, that the plaintiff had waived an assertion that vacation pay should be considered. So we should be aware that the applicability of vacation pay could differ between the federal claim and the state claim. Is that correct? Yes, absolutely. Very well. What was the basis of Judge Wynn's finding that the plaintiff had waived his assertion regarding vacation pay being excluded from the computation of minimum wage and overtime? Well, what she said in her order denying the motion to vacate was that 227.3 was not mentioning the complaint. And it was not it was not asserted during trial. And it was not accepted as a backdrop to the to the to the FLSA claim. Well, there were a couple of places in the transcript where counsel mentioned vacation pay could not be. Yes. And he did that. He did that on this on the premise that you have to assume that the company's paying its vacation pay first that. And so that it's and so that any deduction, therefore, is cannot be taken from vacation. Pay must be taken, therefore, from the residue, which would be the earned wages during that pay period. So he was doing it was a clever argument as a backdrop to get into to buttress his FLSA claim because he wanted he wanted a credit card deductions characterized as invading current earnings. And and for that. But that theory didn't work when the evidence came out. For example, as Judge Wynn pointed out, and this is I believe this is in page. It's E.R. one or two. Just to take an example. One of the people named Lemus has a final wage check of December 15, 2006, and that's for nine hundred twenty six dollars. Three weeks later, she has a her final paycheck, her final paycheck on January 3, 2007, is exclusively for leave for accrued leave. And it's in the amount of thirty four hundred and forty four dollars. And then the deduction, the credit card deduction is taken not from the wage check of of December 15, but is taken from the final paycheck, which is the one of January three. And so did this is this is a counter example to Mr. Harris's factual theory that credit card deductions are taken out of earned currently earned wages taken out of currently earned wages or vacation pay. They're not properly taken out. Correct. That is correct. If you're talking about two things, if you're talking about California law, not federal law, number one and number two, there's no authorization. And this gets back into the fallback argument I mentioned earlier that that there was a signed authorization. Section 224 of the Labor Code allows a withdrawal, a deduction of credit card balances from vacation pay if there is a signed authorization. Yes. And Mr. Harris's clever argument that paycheck doesn't mean doesn't mean pay for leave is an argument he raised for the first time today. Paycheck means paycheck. It means the check that contains your pay. And I think everyone understands that pay includes in the real world. It includes wages and includes sick leave and includes vacation leave. It's the pay. It's what shows up on your on your paycheck. And there was an authorization on that. He's arguing fundamentally a construction of a contract, which is the withdrawal or the credit card deduction. Not quite matter of law. Correct. Yes. OK. Now, there are other arguments. I mean, there are a lot of arguments, I'm afraid to say, that that should be addressed. But I think on the bus point, but I mentioned bus check failure because that was mentioned by Mr. Harris. The bus case is distinguishable because in the bus case, the Ninth Circuit, this court, held that district courts should not apply categorical rules to preclude a Rule 23 action in a hybrid action. And I will confess, we argued to the court, to Judge Winn, that she should adopt a categorical rule, but she wisely did not accept our argument. And instead, she went through the Rule 23 factors. Now, Mr. Harris accuses her of applying a categorical rule. But I think if you read the opinion and if you read the underlying briefs, and in particular, Costco's opposition brief, which is docket number 55, which she cites, she cites pages 19 to 24 of that brief. You'll see there are facts specific to this case that she relied upon in denying Rule 23 certification. And the standard, she doesn't have to prove, the judge doesn't have to prove that she was exercising a discretion. The standard of appeal is whether the appellant has demonstrated that she abused her discretion. And we would submit there's no such finding here. Now, on the backup argument, which you reach it only if you decide that Judge Winn should have entertained an alternative theory that wasn't really argued, namely that there's a 203 violation because vacation pay was not paid in full upon the time of termination, Mr. Harris says again and again that he goes back to Barnhill and he says Barnhill is just the same as this case. And it's not at all the same as this case. Barnhill was a case involving a doctrine of equitable estoppel where the employer engaged in self-help. The employer had no contractual right at the time of termination in Barnhill to seize the unpaid money. But it was owed the money. And there was a note saying it was entitled to the money on demand. So nothing stopped the employer at that point, as you would suggest, Judge Bea, from going to small claims court and collecting and suing and getting the money. The employer was free to do that. But instead, the employer grabbed the money on its own. And the court said, no, you can't do that as a matter of equitable estoppel. So the court in Barnhill did not even address Section 224, which has been on the book since 1937. And, of course, it didn't address 224 because the employer never raised 224. And the employer never raised 224 because there was no written authorization in the Barnhill case. As there is here. Promissory note is not written authorization. Yeah, I agree. Promissory note is not a written authorization for payroll deduction. Promissory note is a written authorization that says I owe you the money. And the on demand provision in the promissory note gave the employer the right to demand it immediately. But there was nothing in the promissory note that said that the employer could make a payroll deduction. Our case, obviously, is dramatically different. And I know that the Division of Labor Standards Enforcement, a very highly respected labor enforcement agency in California, takes the opposite view. But it does so in what's called a DLSE manual, which does not have any weight beyond the weight a court chooses to give it. It's not an interpretative regulation. And if the court reaches this issue, it would strike a blow for sanity in California employment law by saying there are such things as enforceable written authorizations in the payroll context. And when an employer, in this case, Costco gave people a benefit they wouldn't have otherwise, make it easier for them to buy goods. That's true at Costco, at Costco warehouses, but to buy goods. And there was an agreement. There's no allegation in this case that any of these agreements were coerced or fraudulent. Everyone knew what the deal was. And it ought to be respected as a contract. You're saying the extension of credit might not be given to Costco employees in the future if there's not going to be a deduction allowed to be taken. Well, quite frankly, that's already happened because of this case. But, yes, that is a concern. But regardless of whether there's a rock hard, solid contract between the employee and the employer, if the law says upon termination, you get all your hourly wages, overtime and vacation pay, and there can't be any deduction against that, the law trumps the contract, right? Absolutely, Your Honor. But we would contend the law read as a whole. For example, in a 203 case, when a person loses her job and gets fired and is paid a final paycheck, there are deductions that are made from that final paycheck, lawful deductions. Why? Because they're authorized deductions. And we would contend this paycheck deduction is just like one of those other deductions entitled to the same treatment. Well, those deductions are usually for federal taxes and state taxes, right? True, but they're also for things like health insurance, which the employee has enrolled. She is enrolled in the program, and she's getting the benefit of the insurance program. And just because she's fired and has a final paycheck due doesn't mean she can now disregard her contractual obligation to pay the insurance deduction. We would contend this is just the same. We've taken you past your time. Thank you. Mr. Harris, you have a couple of minutes of rebuttal. Thank you. Thank you very much. And the numbers at page nine of the record are accurate. And I'd simply like to clarify that we say that the vacation pay is not relevant for the FLSA analysis, but it is relevant for the state law analysis of the continuing wages. And when the question was raised, why didn't you reopen or seek to reopen, and that was because, as I understood it, Mr. Cadoux said, during the argument, let's assume all the accrued leave was vacation leave. So what we need to do, I think, I think the logical solution here would be to remand the case so that we could have evidence parsing out the vacation pay from the sick pay and determine for state law purposes whether the men and women were paid their wages and vacation pay at closure, and also to have a proper interpretation of Costco's contract, which says I'm giving you the right to deduct from my final paycheck. It doesn't say I'm giving you the right to deduct from my accrued vacation or my accrued sick leave, which at the time the contract was signed, they didn't even have any. When they start working, they don't have any such accruals. All right. Thank you very much. Different individuals, different plaintiffs had either one final paycheck and others had separate paychecks, one for wages, one for vacation pay and sick. Yes. It was divided up. And we said that that was a ruse to, you know, so they could take the deduction from one and not the other. And you need to look at the substance of the transaction and collapse them all together. Thank you. Thank you very much. And thank you for your argument on this very interesting case. And the case of Ward v. Costco will be marked submitted.
judges: Navarro, O'scannlain, Bea